**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Robert Richard SHULTZ, Defendant-Appellant.**

**No. 72-2074.**

United States Court of Appeals, Sixth Circuit.

Argued April 3, 1973.

Decided July 11, 1973.

5. 18 U.S.C. § 2.

**1180**

Bruce S. Kramer, Memphis, Tenn., for defendant-appellant; Rosenfield, Borod, Bogatin & Kremer, Memphis, Tenn., of counsel.

Glen Reid, Jr., Asst. U. S. Atty., for plaintiff-appellee; Thomas F. Turley, Jr., U. S. Atty., W. D. Tenn., Memphis, Tenn., on brief.

Before PHILLIPS, Chief Judge, and McCREE, Circuit Judge, and PRATT, District Judge.[*]

PHILLIPS, Chief Judge.

Shultz seeks a reversal of his conviction on a two count indictment. The jury found him guilty of a violation of the mail fraud statute, 18 U.S.C. § 1341, and of causing to have transported a counterfeit stereo tape cartridge recording in interstate commerce. 18 U.S.C. § 2318. Shultz attacks the sufficiency of the evidence on each count of the indictment and asserts that the mail fraud statute cannot be used to punish activities protected under the Copyright Act. Additionally, he claims reversible error in the admission of certain testimony and in comments by the District Judge. We affirm.

At the outset, we distinguish between counterfeit stereo tapes and so-called bootleg or pirated stereo tapes. Counterfeit tapes are tapes which are represented to be genuine articles of particular record companies when, in truth, they are not. The process includes reproducing the tape itself and also the recognized label of another record company. A bootleg tape is a reproduction of someone else's recording or recordings marketed under a different label. The shipment of counterfeit tapes in interstate commerce is a federal crime. 18 U.S.C. § 2318. The shipment of bootleg tapes is not expressly classified as a federal crime. Several states, including Tennessee, T.C.A. §§ 39–4244–50, have enacted tape piracy statutes against bootleg tape production. It

---

[*] Honorable Philip Pratt, Judge, United States District Court for the Eastern District of Michigan, sitting by designation.

has been claimed that bootleg tapes are protected by the Copyright Act, which exempts musical compositions from its protection. This precise claim was rejected by the Supreme Court in an opinion announced after the briefing and argument of this case. Goldstein v. California, 412 U.S. 546, 93 S.Ct. 2303, 37 L. Ed.2d 163 (1973).

Shultz was indicted, along with two other individuals and a corporation, for producing counterfeit stereo tapes and, in particular, using the mails as an integral part of the scheme to defraud a Memphis wholesaler. He was also charged with having caused to be transported in interstate commerce a stereo tape cartridge with a counterfeit label affixed to it from Florida to Memphis. He received a three year sentence on the first count and six months on the second, the terms to run concurrently.

The first assertion of error is that there was insufficient evidence to convict on either count. In determining this issue we must view the evidence in the light most favorable to the Government in assessing whether there was sufficient evidence to convict the appellant. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); United States v. Wages, 458 F.2d 1270 (6th Cir. 1972).

Essential elements of a violation of the mail fraud statute are 1) a scheme to defraud by means of false or fraudulent representations and 2) use of the mails in furtherance of that scheme.[1]

In the instant case, Shultz was charged with devising a scheme to defraud a Memphis record wholesaler, James W. Crudgington, by selling him approximately 800 stereo tape cartridges. Shultz is alleged to have represented that these tapes were genuine Ampex tapes when, in truth, they were tapes of his own creation.

The record reveals evidence of the following: 1) Shultz had the labels on the tapes produced by an Ohio firm; 2) the labels in question were made by taking photographs of legitimate album covers; 3) Shultz arranged for the tape sleeves, or packaging, to be made; 4) Shultz arranged for the transcription of the tapes from flat record albums and arranged for these tapes to have the labels placed on them; 5) Mr. Crudgington dealt with a man claiming to be "Bob Richards" from the National Tape Center in Dallas in arranging for the purchase of the tapes; 6) the tapes, in fact, were not produced by Ampex, as they were represented to be on the label; 7) "Bob Richards" told Mr. Crudgington that the tapes were legitimate; 8) Shultz used the name "Bob Richards" repeatedly in connection with this scheme; 9) Shultz had access to the telephone from which the offers to Mr. Crudgington took place and actually used this telephone for several calls; 10) the sale contemplated Mr. Crudgington's mailing a check from Memphis to Dallas made out in the real name of Shultz and 11) the check was mailed and Shultz cashed it.

1. 18 U.S.C. § 1341 reads as follows:
"§ *1341. Frauds and swindles*
"Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Post Office Department, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined not more than $1,000 or imprisoned not more than five years, or both."

It should be noted that Mr. Crudgington reported the initial offer of the tapes to the F.B.I. and, thereafter, worked with the F.B.I. on the case. The fact that he was not deceived by the tapes is irrelevant. The gist of the offense is the intent to defraud.

Shultz claims that there was testimony in the record that would indicate that another person, Allen Goldfield, actually made the deal with Mr. Crudgington and the representations about the tapes. While some of the testimony may so indicate, we find that there was sufficient credible testimony in the record to permit the jury to reach the conclusion that Shultz actually made the calls to Mr. Crudgington and made the representations of legitimacy concerning the tapes. The mailing of the check from Memphis to Dallas was expressly mentioned in the telephone call to Mr. Crudgington and was an explicit part of the scheme.

The incident which gives rise to the charge under § 2318 [2] is the actual sending of the tapes involved. This was done by a man using the name R. Craig in a Florida air terminal. There was testimony that Shultz used the alias R. Craig in connection with the tape scheme and also direct testimony that the defendant actually shipped the tapes. We feel that this evidence, when combined with all of the evidence mentioned above, was sufficient to support a finding that Shultz at least *caused* the tapes to be shipped in interstate commerce, if he did not ship them himself.

We find that there was sufficient evidence under both counts to support a guilty verdict.

It is asserted that evidence was admitted, in two separate instances, which was unduly prejudicial and re-versible error. The first area objected to was testimony by one of the co-defendants about a trip which the two defendants had made to New York City in the spring of 1970, one month before the shipment of tapes which is the subject of the present indictment. The co-defendant testified that during this trip Shultz told him, for the first time, that the tapes in question were counterfeit. The testimony also mentioned that during the trip Shultz was robbed and the co-defendant kidnapped for a short time in connection with the tapes. It is difficult to understand how testimony that Shultz had been robbed in New York City would be prejudicial to him in this case. In any event this incident was relevant to the issue of whether Shultz had criminal intent in regard to the tapes. It should be pointed out that at trial Shultz relied on advice he claimed to have received from an attorney one month after the New York trip that his activities in connection with the tapes constituted bootlegging and were legal. There was no abuse of discretion on the part of the District Court in the admission of the testimony concerning the New York trip.

The second asserted error in the admission of the evidence was the testimony by one of Shultz' associates that he was afraid of Shultz because of his Mafia connections. This testimony was elicited on re-direct examination after the entire area of fear had been opened up and examined closely by defense counsel on cross-examination and after appropriate warnings by the District Judge.

We find that the mention of the word "Mafia" once by the witness on re-direct after the area had been opened up by

2.  18 U.S.C. § 2318 reads as follows:
    "§ *2318. Transportation, sale, or receipt of phonograph records bearing forged or counterfeit labels*
    "Whoever knowingly and with fraudulent intent transports, causes to be transported, receives, sells, or offers for sale in interstate or foreign commerce any phonograph record, disk, wire, tape, film, or other article on which sounds are recorded, to which or upon which is stamped, pasted, or affixed any forged or counterfeit label, knowing the label to have been falsely made, forged, or counterfeited, shall be fined not more than $1,000 or imprisoned not more than one year, or both."

the defense on cross-examination was not reversible error.

The appellant's final claim is that a remark by the District Judge constituted an instruction that silence by the defendant was evidence of guilt.

Defense counsel did not offer an objection or request a curative instruction. The District Judge gave the instructions on the presumption of innocence and the fact that the law never imposes a duty to testify on the defendant nor does it permit any inference from the failure to testify. When read in context and in viewing the case as a whole, the error, if any, was harmless.

Affirmed.